UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:15-cr-91 |
| v. | ) | |
| | ) | Judge Travis R. McDonough |
| RAY FOSTER | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| | ) | |

**ORDER**

Defendant Ray Foster has moved to suppress certain statements made to law enforcement. (Doc. 139.) In supplemental briefing, Defendant also argued that the Court should suppress certain evidence obtained from his residence, pickup truck, and camper. (Doc. 332.) Magistrate Judge Susan K. Lee held a hearing on the motion and filed a report and recommendation ("R&R"), recommending that the Court deny Defendant's motion to suppress. (Doc. 341.) Defendant timely objected to the R&R.[1] (Doc. 350.) The Court has conducted a *de novo* review of the record as it relates to Defendant's objections, and for the reasons stated hereafter, will: (1) **OVERRULE** Defendant's objections to the R&R; (2) **ACCEPT** and **ADOPT** the R&R; and (3) **DENY** Defendant's motion to suppress (Doc. 139).

**I.    STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the

---

[1] The Government did not file a response to Defendant's objections.

factfinder, has the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## II. BACKGROUND

On August 25, 2015, a grand jury returned a thirty-two-count indictment that charged fourteen individuals. (Doc. 1.) The Indictment specifically charged Defendant with conspiracy to distribute and possess with the intent to distribute methamphetamine and possession of methamphetamine with the intent to distribute. (*Id*.) On February 18, 2016, Defendant filed a motion to suppress certain statements he made to law enforcement. (Doc. 139.) Defendant argues that incriminating statements he made to law enforcement were obtained in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. (*Id*. at 2.) Defendant also argues the statements should be suppressed because law enforcement failed to warn him of his *Miranda* rights, and because his statements were not made voluntarily. (*Id*.)

On September 13, 2016, Magistrate Judge Lee held an evidentiary hearing on Defendant's motion to suppress. (*See* Doc. 326.) At the evidentiary hearing, Magistrate Judge Lee heard testimony from: (1) Tennessee Bureau of Investigation Special Agent Bryan Freeman; (2) Tenth Judicial District Drug Task Force Agent Clay Moore; and (3) Defendant. (*Id*.) At the evidentiary hearing, Defendant orally modified his motion to suppress, additionally seeking suppression of evidence found during a warrantless search of his residence because his

consent to search was not knowing and voluntary and, even if it was, the search of the camper and truck parked at his residence exceeded the scope of his consent. (Doc. 341, at 1–2.) The parties also submitted post-hearing supplemental briefing regarding Defendant's motion. (Docs. 330, 332.)

On September 28, 2016, Magistrate Judge Lee entered her R&R, recommending that the Court deny Defendant's motion to suppress. (Doc. 341.) On October 11, 2016, Defendant filed objections to the R&R. (Doc. 350.) Defendant did not object to the basic facts outlined in Magistrate Judge Lee's R&R, but did object to the findings and legal conclusions related to those facts. (*See id.*) After reviewing the record before the Court and finding the facts to be consistent with Magistrate Judge Lee's R&R, the Court **ADOPTS BY REFERENCE** the facts as set out in the R&R.[2] (Doc. 341, at 2–12.) *See, e.g.*, *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). Defendant's objections to Magistrate Judge Lee's R&R are now ripe for review.

## III. ANALYSIS

Defendant asserts three objections to Magistrate Judge Lee's R&R. Specifically, Defendant objects to Magistrate Judge's Lee's findings that: (1) Defendant knowingly and voluntarily gave consent to search his residence; (2) law enforcement did not exceed the permissible scope of Defendant's consent to search; and (3) Defendant's statements to law enforcement were voluntarily given. (Doc. 350, at 4–10.)

### A. Defendant's Consent to Search His Residence

Defendant objects to Magistrate Judge Lee's finding that he knowingly and voluntarily consented to law enforcement's search of his residence on July 31, 2014. (*Id*. at 4–5.) Defendant specifically argues that his consent to search was not voluntary because his parole

---

[2] The Court notes that neither party provided it with a copy of the transcript from the September 13, 2016 evidentiary hearing before Magistrate Judge Lee.

3

officer appeared at his residence with other law enforcement agents and because he feared that his parole would be revoked if he refused to allow them to search his residence. (*Id*. at 5.) Defendant further argues that he "only consented to the search because he had previously consented to government searches as a condition of parole." (*Id*.)

As Magistrate Judge Lee noted in her R&R, on July 31, 2014, Defendant signed advice-of-rights and waiver-and-consent forms. (Doc. 341, at 19.) The waiver form, which Defendant signed on July 31, 2014, specifically provides:

> I, Ray Arnold Foster, having [b]een informed of my constitutional right not to have a search of the premises [h]ereinafter mentioned without a search warrant and of my right to refuse consent to such a search, hereby waive this right and authorize Bryan Freeman, Clay Moore officers of the 10th Judicial District Drug Task Force to conduct a complete search of my residence located at: 410 Thacker Lane, Etowah, TN[.] These officers are authorized by me to take from my premises any letters, papers, materials or other property which they may desire. This written permission is being given by me to the above named person[s] voluntarily and [w]ithout threats or promises of any kind.

(Ex. 2 to Mot. to Suppress Hearing.)

In this case, the mere presence of Defendant's parole officer does not make his consent to search any less voluntary, especially considering that he executed a consent-to-search form specifically acknowledging that he had been informed of his rights and that he was giving permission to search "voluntarily and [w]ithout threats or promises of any kind." There is nothing in the record to suggest that Defendant's consent was not voluntary or that he was threatened or coerced into signing the consent-to-search form. Accordingly, because the Court agrees with Magistrate Judge Lee's well-reasoned analysis, Defendant's objections to the R&R as to the voluntariness of his consent to search his property will be **OVERRULED**.

### B. *The Scope of Defendant's Consent to Search*

Defendant next objects to Magistrate Judge Lee's finding that law enforcement did not exceed the permissible scope of his consent to search his residence. Specifically, Defendant

4

argues that, even if he gave law enforcement consent to search his residence, his consent to search did not extend to the camper and truck parked at his residence.

In support of this argument, Defendant argues *United States v. Zavala*, 541 F.3d 562 (5th Cir. 2008) is instructive. In *Zavala*, the United States Court of Appeals for the Fifth Circuit reversed a district court's denial of a defendant's motion to suppress, holding that it was not objectively reasonable for an officer to believe he had consent to search cell phones recovered from the defendant's person based on the defendant's consent to search his vehicle. *Id*. at 576. In making this determination, the court of appeals explained that "[g]iven that [defendant's] phones were immediately removed from his person and placed on the roof of the vehicle, it was not objectively reasonable to understand his consent to search the car as consent to search the phones."[3] *Id*. at 571, 576.

The Court finds *Zavala* distinguishable and of limited utility as it relates to the present case. Unlike the officer in *Zavala*, who only had oral consent to search the defendant's vehicle, law enforcement officers in this case conducted a search of Defendant's property based on a written and signed consent form executed by Defendant. The consent form Defendant executed gave law enforcement consent to perform a "complete search" of his "residence," and authorized law enforcement to take from the "premises any letters, papers, materials or other property which they may desire." Although the language utilized in the consent form is somewhat imprecise, its reference to Defendant's "premises" and authorization of a "complete search" makes it objectively reasonable for law enforcement to have believed that Defendant's consent included the truck and camper located on the "premises," even though those vehicles were not located

---

[3] The court of appeals further relied on Fifth Circuit precedent holding that where a person consents to a search of his vehicle, the consent does not necessarily extend to a search of his person. *Id*. at 576 (citing *United States v. Johnson*, 462 F.3d 399 (5th Cir. 2005)).

within the walls Defendant claims constitute his "residence." Also indicative of the objective reasonableness of the search is that at no point during the search did Defendant object to the search of the truck and camper, clarify the scope of his consent, or withdraw his consent to search. *See United States v. Lucas*, 640 F.3d 168, 177–78 (6th Cir. 2011).[4] Considering the totality of the circumstances, the Court agrees with Magistrate Judge Lee's determination that it was objectively reasonable for law enforcement officers to believe that Defendant's consent to search included consent to search the camper and truck. Accordingly, Defendant's objections as to the scope of his consent to search will be **OVERRULED**.[5]

### C. Defendant's Statements to Law Enforcement

Finally, Defendant objects to Magistrate Judge Lee's finding that his incriminating statements to law enforcement were made voluntarily. Defendant argues his statements to law enforcement were not voluntary because: (1) he was under the influence of methamphetamine when he made the statements; (2) law enforcement coerced his statements by bringing his parole

---

[4] Defendant argues Magistrate Judge Lee's reliance on *Lucas* is misplaced because that case involved law enforcement's search of a laptop computer that was located within a residence that law enforcement had obtained consent to search. (Doc. 350, at 6.) Defendant attempts to distinguish *Lucas* from the present situation based on the fact that his truck and camper were located outside his residence. (*Id*.) Although factually distinguishable from the present case, *Lucas's* holding that a defendant's failure to object to the scope of a search at the time the search is conducted is an indication that the defendant believes the locations searched fall within the scope of the previously given consent is nonetheless applicable here.

[5] Additionally, Magistrate Judge Lee found that, even if evidence obtained from the truck and the camper was improperly obtained, it still would have been inevitably discovered through lawful independent means—namely, through a parole search which Defendant previously agreed to as part of his parole conditions. (Doc. 341, at 25.) As referenced in Magistrate Judge Lee's R&R, Task Force Agent Moore testified that "the whole property could be searched according to the terms of Defendant's parole agreement," and Defendant acknowledged that "he had a parole contract that required him to submit to parole searches." (*Id*. at 5, 10.) Defendant did not object to these facts as set forth in Magistrate Judge Lee's R&R. As such, the testimony elicited at the suppression hearing indicates that, even if the scope of Defendant's consent to search did not include the camper and truck, the camper and truck still could have been searched pursuant to Defendant's parole agreement. This serves as an additional independent basis for overruling Defendant's objections as to the scope of his consent.

6

officer to his residence on July 31, 2014, and threatening to call the Tennessee Department of Child Services; and (3) law enforcement threatened seizure of his pickup truck. (Doc. 350, at 7–10.)

As an initial matter, the Court agrees with Magistrate Judge Lee's finding that Defendant was not subject to a custodial interrogation or interview on July 31, 2014, or on February 5, 2015. As such, Defendant's statements to law enforcement were not obtained in violation of the procedural safeguards established by *Miranda v. Arizona*, 384 U.S. 436 (1966). Thus, it is unnecessary to determine whether Defendant's waivers of his *Miranda* rights were voluntary or whether law enforcement improperly coerced his statements.[6]

Nonetheless, even if Defendant's statements on July 31, 2014, and February 5, 2015, were considered to have been made in the context of a custodial interview, the Court would still adopt Magistrate Judge Lee's finding that Defendant's waivers of his *Miranda* rights were made voluntarily. As Magistrate Judge Lee explained in her R&R, she found the testimony of Task Force Agent Moore and Special Agent Freeman far more credible than Defendant's testimony and, on that basis, found there was no evidence that these officers knew of or took advantage of Defendant's supposed weakened mental state brought on by his methamphetamine use. (Doc. 341, at 21.) Moreover, as Magistrate Judge Lee explained, there was "little" evidence in the record to "support [Defendant's] claim of coercion." (*Id*. at 22.) As it relates to his statements on July 31, 2014, Magistrate Judge Lee noted that any statement made by Officer Cherry threatening to call the Department of Child Services was made long after Defendant made incriminating statements to law enforcement. Additionally, the mere presence of Defendant's

---

[6] Defendant does not object to Magistrate Judge Lee's finding that his statements to law enforcement on July 31, 2014, and February 5, 2015, were not made in the context of a custodial interrogation.

7

parole officer on July 31, 2014, does not render Defendant's statement to law enforcement coerced. It does not necessarily follow that because Plaintiff subjectively believed he may be arrested based on the presence of his parole officer, the parole officer's presence was "objectively improper" and coercive, especially because there is nothing in the record suggesting that law enforcement ever actually threatened to arrest Defendant on July 31, 2014. *See United States v. Crowder*, 62 F.2d 782, 787 (6th Cir. 1995) (holding that a defendant's subjective belief his girlfriend was being arrested was insufficient to show his statements were coerced by law enforcement when police did not actually threaten to arrest defendant's girlfriend).

As it relates to Defendant's statements to law enforcement on February 5, 2015, the fact that Defendant received a notice of seizure of his pickup truck does not qualify as improper coercion. Special Agent Freeman, one of the officers who met with Defendant on February 5, 2015, specifically testified that he did not have any involvement in issuance of the truck seizure notice or causing the truck seizure notice to be issued. Magistrate Judge Lee found Special Agent Freeman's testimony credible and concluded that there was not any evidence in the record to suggest that law enforcement improperly coerced Defendant's incriminating statements on February 5, 2015, and the Court sees no reason to reject Magistrate Judge Lee's finding.

Unlike his statements to law enforcement on July 31, 2014, and February 5, 2015, Defendant's statements to law enforcement on September 9, 2015, were made in the context of a custodial interrogation. Defendant's objections to the R&R, however, fail to identify any coercive conduct on the part of law enforcement as it relates to obtaining Defendant's waiver of his *Miranda* rights on that date. Additionally, Magistrate Judge Lee considered Defendant's testimony regarding his drug use and concluded that his methamphetamine use did not prevent a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Because the magistrate judge,

8

as the factfinder, has the best opportunity to observe and hear the witnesses and assess their demeanor, the Court finds Defendant's objections fail to provide a sufficient basis to depart from Magistrate Judge Lee's finding regarding the voluntariness of Defendant's statements on September 9, 2015. *Moss*, 286 F.3d at 868.

Accordingly, Defendant's objections as to the admissibility of his statements to law enforcement are **OVERRULED**.

## IV. CONCLUSION

For the reasons stated herein, Defendant's objections to the R&R (Doc. 350) are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R (Doc. 341) and **DENIES** Defendant's motion to suppress (Doc. 139).

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**